NO. 25-11066

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

**MESA UNDERWRITERS SPECIALTY INSURANCE COMPANY,**
*Plaintiff-Appellee*

**v.**

**ALICIA ORTA; UNIVERSAL PROTECTION SERVICE, L.P., doing business as ALLIED UNIVERSAL SECURITY SERVICES**
*Defendants-Appellants*

On appeal from Civil Action No. 3:23-cv-02649-X
In the United States District Court for the Northern District of Texas at Dallas

**APPELLANT ALICIA ORTA'S BRIEF**

Mark A. Ticer
State Bar No. 20018900
mticer@ticerlaw.com
Jennifer W. Johnson
State Bar No. 24060029
jjohnson@ticerlaw.com
**Law Office of Mark A. Ticer**
10440 N. Central Expressway, Suite 600
Dallas, Texas 75231
(214) 219-4220 (Telephone)
(214) 219-4218 (Facsimile)

ORAL ARGUMENT REQUESTED

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel certifies that the following listed persons and entities as described in Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order for the judges of this court to evaluate possible disqualifications or recusal.

1. Defendant-Appellant Alicia Orta ("Orta").

2. Mark A. Ticer and Jennifer W. Johnson, with the Law Office of Mark A. Ticer, in the district court and in this Court as counsel for Orta.

3. Defendant-Appellant Universal Protection Service, L.P., d/b/a Allied Universal Security Services ("Allied"), a limited partnership whose sole general partner, Universal Protection Service GP, Inc., is a California corporation.

4. Douglas P. Skelley, with the Shidlofsky Law Firm, PLLC, in the district court and in this Court as counsel for Allied.

5. Rebecca DiMasi, with the Shidlofsky Law Firm, PLLC, LLP, in this Court as counsel for Allied.

6. Jillian J. Keith and Joshua D. Hamm, with Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, in the district court as counsel for Allied.

7. Plaintiff-Appellee Mesa Underwriters Specialty Insurance Company ("MUSIC"), a foreign insurance company licensed to conduct business in the State of Texas.

8. Stephen Melendi and Matthew Rigney, with Tollefson Bradley Mitchell & Melendi, LLP, in the district court and in this Court as counsel for MUSIC.

9. Defendant USAPD, LLC d/b/a USA Patrol Division ("USAPD"), a Texas limited liability company.

10. Martyn B. Hill and Michael A. Harris, with Pagel, Davis & Hill, P.C., in the district court as counsel for USAPD.

/s/ Mark A. Ticer
Mark A. Ticer
Attorney of Record for Appellant Alicia Orta

## STATEMENT REGARDING ORAL ARGUMENT

The District Court incorrectly determined that the assault and battery exclusion in the MUSIC policy was unambiguous and therefore MUSIC was excused from the duty to defend and indemnify USAPD and Allied in Orta's underlying lawsuit styled *Alicia Orta as Next Friend of C.O., a minor child v. USAPD, LLC d/b/a USA Patrol Division and Greyhound Lines, Inc.*, Cause No. DC-23-13750 in the 101st District Court of Dallas County, Texas (the "Liability Lawsuit"). However, the assault and battery exclusion in MUSIC's policy has not been substantively addressed by the Texas courts, this Court, and apparently other courts in other jurisdictions.

Accordingly, oral argument may assist and benefit this Court in addressing and construing the assault and battery exclusion in MUSIC's policy. Orta respectfully requests this Honorable Court schedule oral argument for this appeal. *See Fed. R. App. P.* 34(a); 5th Cir. Loc. R. 28.3.

## TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ....................................................... 2

STATEMENT REGARDING ORAL ARGUMENT .............................................. 4

TABLE OF CONTENTS............................................................................................ 5

TABLE OF AUTHORITIES ..................................................................................... 7

STATEMENT REGARDING JURISDICTION ..................................................... 11

STATEMENT OF ISSUES PRESENTED FOR REVIEW ................................. 12

STATEMENT OF THE CASE............................................................................... 13

   A. Procedural History of the Case........................................................................ 13

   B. Substantive Background ................................................................................. 14

     1. The Policy ................................................................................................... 14

     2. USAPD-Allied Contract ............................................................................ 17

     3. The Liability Lawsuit................................................................................. 17

     4. MUSIC's Declaratory Judgment Action ...................................................... 18

STANDARD OF REVIEW ................................................................................... 21

SUMMARY OF ARGUMENT ............................................................................. 22

ARGUMENTS AND AUTHORITIES ................................................................. 23

I. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF MUSIC ...................................................................................... 23

   A. The Law ........................................................................................................ 23

   B. MUSIC Owes Allied and USAPD a Duty to Defend..................................... 26

C. The District Court Prematurely Decided Indemnity ....................................... 35

II. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING ORTA'S RULE 12(B)(1) AND (6) MOTION...................................................................... 36

    A. The Law ...................................................................................................... 36

    B. The District Court Should Have Granted Orta's Motion ............................. 38

CONCLUSION ....................................................................................................... 39

CERTIFICATE OF SERVICE ............................................................................... 40

CERTIFICATE OF COMPLIANCE ...................................................................... 41

## TABLE OF AUTHORITIES

**Cases**

*Alberto v. Diversified Group, Inc.*,
  55 F.3d 201 (5th Cir. 1995) ...............................................................................23

*Am. Home Assur. Co. v. Cat Tech, LLC*,
  660 F.3d 216 (5th Cir. 2011) ..................................................................... 24, 26

*Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel L.L.C.*,
  620 F.3d 558 (5th Cir. 2010) .............................................................................23

*Am. Nat'l Ins. Co. v. Ryan*,
  274 F.3d 319 (5th Cir. 2001) .............................................................................21

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544, 127 S.Ct. 1955, 167 L.E.2d 929 (2007).....................................21

*Bitco Gen. Ins. Co. v. Monroe Guar. Ins. Co.*,
  31 F.4th 325 (5th Cir. 2022) .............................................................................33

*Campbell v. Wells Fargo Bank*,
  781 F.2d 440 (5th Cir.1986) .............................................................................37

*Cantutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. of Pittsburgh, PA*,
  99 F.3d 695 (5th Cir. 1996) .............................................................................24

*Colony Ins. Co. v. Peachtree Constr. Ltd.*,
  647 F.3d 248 (5th Cir. 2011) ............................................................. 21, 25, 35

*Custom Aluminum Prods. Inc. v. Amerisure Ins. Co.*,
  No. 1:17-CV-5745, 2018 WL 5977918 (N.D. Ill. Nov. 14, 2018)................ 30, 31

*Farmers Tex. County Mut. Ins. Co. v. Griffin,*
  955 S.W.2d 81 (Tex 1997)................................................................................25

*Forbau v. Aetna Life Ins. Co.,*
  876 S.W.2d 132 (Tex. 1994) ..................................................................... 23, 26

*Gen. Star Indem. Co. v. Vesta Fire Ins. Corp.,*
  173 F.3d 946 (5th Cir. 1999) ........................................................................21

*Gore Design Completions Lt. v. Hartford Fire Ins. Co.,*
  538 F.3d 365 (5th Cir. 2008) ..................................................................... 25, 35

*Guar. Nat'l Ins. Co. v. Vic Mfg. Co.,*
  143 F.3d 192 (5th Cir. 1998) ........................................................................24

*Hartford Cas. Ins. Co. v. DP Engineering, L.L.C.,*
  827 F.3d 423 (5th Cir. 2016) ..................................................................... 25, 35

*In re Essex Ins. Co.,*
  450 S.W.3d 524 (Tex. 2014) (orig. proceeding) ..................................................38

*Klein v. O'Neal, Inc.,*
  No. 7:03-cv-102-D, 7:09-cv-094-D, 2009 WL 10656010 (N.D. Tex. Nov. 2,
  2009) ........................................................................................................37

*Lawyers Title Ins. Corp. v. Doubletree Partners, LP,*
  739 F.3d 848 (5th Cir. 2014) ........................................................................24

*Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr.*
  468 F.3d 857 (5th Cir. 2006) ................................................................. 24, 25, 26

*Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,*
  369 F.3d 464 (5th Cir.2004) ........................................................................36

*Maxus Exploration Co. v. Moran Bros. Inc.*,
817 S.W.3d 50 (Tex. 1999) ....................................................................23

*McLane Foodservice, Inc. v. Table Rock Rests, LLC*,
736 F.3d 375 (5th Cir. 2013) ................................................................24

*Mitchell v. Bailey*,
982 F.3d 937 (5th Cir. 2020) .................................................................36

*Moran v. Kingdom of Saudi Arabia*,
27 F.3d 169 (5th Cir. 1994) ...................................................................36

*Northfield Ins. Co. v. Loving Home Care, Inc.*,
363 F.3d 523 (5th Cir. 2004) ......................................................... 23, 37

*Oaxaca v. Roscoe*,
641 F.2d 386 (5th Cir. 1981) ......................................................... 21, 36

*Orix Credit Alliance, Inc. v. Wolfe*,
212 F.3d 891 (5th Cir. 2000) .................................................................37

*RSUI Indem. Co. v. The Lynd Co.*,
466 S.W.3d 113 (Tex. 2015) ........................................... 26, 29, 31, 33

*Sherwin-Williams Co. v. Holmes Cnty.*,
343 F.3d 383 (5th Cir. 2003) .................................................................37

*Shields v. Norton*,
289 F.3d 832 (5th Cir. 2002), *cert. denied*, 537 U.S. 701 (2002) ................. 21, 36

*SnyderGeneral Corp. v. Great Am. Ins. Co.*,
928 F. Supp. 674 (N.D. Tex. 1996) .......................................................23

*State Farm Lloyds v. Page*,
315 S.W.3d 525 (Tex. 2020) ..................................................................23

*Tasacom Real Estate, LLC v. Associated Indus. Ins. Co. Inc.*,
   No. 3:23-cv-1687-X, 2024 WL 3635519 (N.D. Tex. Jun. 18, 2024)............ 27, 28

*Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, LLP*,
   267 F.Supp.2d 601 (E.D. Tex. 2003)............................................................ 37, 39

*Woodward v. Andrus*,
   419 F.3d 348 (5th Cir. 2005) ..............................................................................21

## Statutes

28 U.S.C. § 1291 .....................................................................................................11

*Tex. Ins. Code* § 554.002 .......................................................................................24

*Tex. Ins. Code*, art. 21.42 ......................................................................................23

## Rules

5th Cir. Loc. R. 28.3.................................................................................................4

*Fed. R. App. P.* 34(a)...............................................................................................4

*Fed. R. Civ. P.* 12(b)(1)..........................................................................................36

*Fed. R. Civ. P.* 12(b)(6)..........................................................................................36

*Fed. R. Civ. P.* 56(a)...............................................................................................21

## STATEMENT REGARDING JURISDICTION

Jurisdiction for this appeal is founded on 28 U.S.C. § 1291 as the district court's orders of January 22, 2025 and August 22, 2025 constitute final decisions or orders falling directly under this Court's jurisdiction. Orta provided timely notice of appeal for these orders through Orta's *Amended Notice of Appeal* filed on September 18, 2025.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

1.    Did the district court incorrectly determine that the assault and battery exclusion in the MUSIC policy is unambiguous and that MUSIC has no duty to defend and indemnify Allied and USAPD in connection with the Liability Lawsuit?

2.    Did the district court err in denying Orta's Rule 12(b)(1) and (6) motion to dismiss?

## STATEMENT OF THE CASE

### A. Procedural History of the Case

This appeal involves a declaratory judgment lawsuit filed by MUSIC regarding the Liability Lawsuit asserted by Orta against USAPD and Allied in Dallas County, Texas. ROA.13-19. In response, Orta filed a Rule 12(b)(1) and (6) motion to dismiss. ROA.34-42. On January 22, 2025, the district court denied Orta's motion. ROA.300-305.

Subsequently, MUSIC filed a motion for summary judgment against Orta, USAPD, and Allied regarding its duties to defend and indemnify USAPD in the Liability Lawsuit. ROA.167-288. Allied followed with a cross motion for summary judgment. ROA.330-358.

By opinion and order dated August 22, 2025, the District Court entered a final judgment in favor of MUSIC, finding no duty to defend or indemnify was owed to USAPD and Allied for the Liability Lawsuit. ROA.477-483. The District Court also denied Allied's cross-motion for summary judgment. ROA.477-483.

On September 17, 2025, Orta gave timely notice of appeal. ROA.484-485. On September 18, 2025, Orta filed a timely amended notice of appeal. ROA.490-491.

**B. Substantive Background**

**1. The Policy**

MUSIC issued to USAPD a commercial liability policy, policy number MP0042018003294, with a policy period of November 2, 2021 to November 2, 2022 (the "Policy"). ROA.211-276. USAPD is in the business of private security, furnishing security guards to its customers. ROA.193.

The Policy provides that MUSIC will pay those sums (settlements or judgments) that USAPD "becomes legally obligated to pay as damages because of 'bodily injury.'" ROA.245. The Policy is an occurrence based policy and covers damages for "bodily injury" cause by an "occurrence" that takes place in the "coverage territory" and occurs during the policy period. ROA.245.

The Policy includes several endorsements, among them a "Blanket Additional Insureds – As Required By Contract" which states:

> **Blanket Additional Insureds - As Required By Contract**
>
> **A.** Subject to the Primary and Non-Contributory provision set forth in this endorsement, **SECTION II - WHO IS AN INSURED** is amended to include as an additional insured any person or organization whom you have agreed in a written contract, written agreement or written permit that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury" or "property damage" or, to the extent applicable under the Coverage Part to which this endorsement applies, "personal and advertising injury" caused, in whole or in part, by:

**1.** Your ongoing operations, "your product", or premises owned or used by you;

. . .

ROA.240 (bold in original).

This endorsement made Allied an additional insured under the Policy. ROA.240.

The Policy also includes another endorsement entitled "Assault or Battery Exclusion" (the "Exclusion"), which provides in relevant part:

I. This insurance does not apply to locations specified in the above Schedule for "bodily injury", "property damage", "personal and advertising injury", or medical payments under Coverage C, caused by, arising out of, resulting from, or in any way related to an "assault" or "battery" when that "assault" or "battery" is caused by, arising out of, or results from, in whole or in part from:

. . .

B. The failure to provide a safe environment including but not limited to the failure to provide adequate security, or to warn of the dangers of the environment, or

C. The negligent employment, investigation, supervision, hiring, training or retention of any person[.]

. . .

ROA.228.

An Excluded Location Schedule (the "Schedule") is also a part of the Exclusion and appears as follows:

**Assault or Battery Exclusion – Excluded Location Schedule**

*If no locations are specified below, the Assault or Battery Exclusion applies to ALL locations*

| Loc. # | Address |
|--------|---------|
|        |         |
|        |         |
|        |         |

ROA.228.

This Schedule provides for a specific address and location number that corresponds to a particular address. ROA.228.

The Exclusion endorsement further states: "This exclusion applies to all locations if the above Excluded Location Schedule is left blank." ROA.228. The term "ALL locations" is not defined in the Policy. ROA.257-260. Moreover, the term "all locations" is not used anywhere else in the Policy. ROA.211-276. However, the Policy declarations include a Location Schedule mimicking the Excluded Location Schedule in the Exclusion Endorsement. ROA.223. In the location schedule in the Policy declarations, it identifies premises owned, rented, or occupied by USAPD (the "Declarations Locations"), with a single location listed: 13326 Westheimer Road, Houston, Texas 77077 ("USAPD's Corporate Office"), as "Loc. No. 001." ROA.223:

| Location(s) Of All Premises you Own, Rent or Occupy, Classification & Premium Provided | | | | | | |
|---|---|---|---|---|---|---|
| | | | Rate | | Advanced Premium | |
| Code No. | Classification Description | Premium Basis / Exposure* | Premises / Operations | Products / Comp Ops | Premises / Operations | Products/ CompOps |
| Loc. No. | Street Address | Street Address | | City | State | Zip |
| 001)  13326 WESTHIEMER RD | | | | HOUSTON | TX 77077 | |

ROA.223.

These two location schedules are the only place in the Policy that refer to numbered locations and addresses. ROA.211-276.

### 2. USAPD-Allied Contract

Allied contracted with Fort Worth Transportation Authority to provide security services which in turn Allied subcontracted to USAPD. ROA.278-288. As part of this subcontract, USAPD was obligated to provide general liability insurance coverage, naming Allied as an additional insured. ROA.280. As a consequence of Orta's lawsuit against Allied and USAPD, Allied sought a defense and indemnity from MUSIC as an additional insured. ROA.321-329.

### 3. The Liability Lawsuit

Orta, as next friend of C.O., a minor, sued USAPD and Allied[1], alleging that on April 2, 2022, C.O. was at the bus station in Fort Worth, Texas where Allied had contracted to provide security services which Allied in turn subcontracted to USAPD. ROA.194. Orta alleges that C.O. intended to take a bus to Dallas, and C.O approached Quincy Neighbors ("Neighbors"), whom C.O. believed was a police officer because Neighbors was dressed in a uniform as an armed security guard. ROA.194. Orta further alleges that Neighbors was hired by USAPD or Allied, and C.O. asked for help in finding the right bus. ROA.194. Orta also contends that Neighbors, while in the course and scope of his employment, told C.O. that he could drive her home after his shift concluded. ROA.194. Thereafter, C.O. got into

---

[1] Initially, MUSIC only listed USAPD and Orta as defendants. ROA.13-19. By amended complaint dated August 30, 2024, MUSIC added Allied as a Defendant. ROA.108-117.

Neighbors' vehicle and Neighbors took C.O. to a secluded park in Fort Worth where Neighbors sexually assaulted her, causing severe injuries. ROA.194. Orta does not allege that C.O. was injured at the bus station. ROA.194.

Orta's claims include negligence against Allied and USAPD, resulting in C.O.'s injuries. ROA.194-203. Orta further alleges that because Neighbors has a past criminal record, Allied and USAPD were guilty of negligent hiring, retaining, and supervising Neighbors. ROA.194-203. Orta also asserts claims of gross negligence against all defendants in the Liability Lawsuit. ROA.202.

### 4. MUSIC's Declaratory Judgment Action

On December 1, 2023 MUSIC filed its declaratory judgment action against USAPD and Orta. ROA.13-19. On March 5, 2024, USAPD filed its answer. ROA.44-51. On this same day, Orta filed her motion to dismiss pursuant to *Fed. R. Civ P.* 12(b)(1) and (6). ROA.34-42. MUSIC responded to Orta's motion to dismiss on April 9, 2024. ROA.64-72.

On August 30, 2024, following leave being granted, MUSIC filed an amended complaint, adding Allied as a Defendant to the lawsuit. ROA.108-117. Allied answered on October 7, 2024 and filed an amended answer on November 12, 2024. ROA.125-134.

On December 4, 2024 MUSIC filed its motion for summary judgment, arguing it had no duty to defend or indemnify USAPD and Allied in the Liability

Lawsuit. ROA.167-288. On January 22, 2025, the District Court denied Orta's motion to dismiss. ROA.300-305.

On January 31, 2025, Allied filed its response to MUSIC's motion for summary judgment and also filed a cross motion for summary judgment against MUSIC. ROA.330-358. On this same day, USAPD and Orta filed their responses and joinders to Allied's response to MUSIC's motion. ROA.359-365. On February 28, 2025, MUSIC filed its response to Allied's cross motion for summary judgment and reply to the summary judgment responses of Allied, USAPD, and Orta. ROA.381-397. On March 14, 2025, Allied filed its reply to MUSIC's response to Allied's cross motion for summary judgment. ROA.434-445.

By order dated March 24, 2025, the District Court permitted Allied to file a second amended answer and certain counterclaims. ROA.451-461. On April 8, 2025, MUSIC answered Allied's counterclaim. ROA.462-468.

On August 22, 2025, the District Court issued a final judgment in favor of MUSIC, finding MUSIC had no duty to defend or indemnify Allied and USAPD for the Liability Lawsuit. ROA.477-483. In this same judgment, the District Court denied Allied cross motion for summary judgment. ROA.477-483.

In granting MUSIC declaratory relief, the District Court held that although MUSIC could have "written the Exclusion more clearly by rewording it or not using a form," the Exclusion is unambiguous. ROA.482. Notably, the District Court did

not hold that the interpretation offered by the Appellants/Defendants, in light of the lack of clarity in the Exclusion, was unreasonable. ROA.477-483.

Significantly, the District Court's analysis of the Policy did not take into account the context of the Exclusion, the use, purpose, significance, and context of the location schedule in the Exclusion, and the location schedule in the Policy declarations. ROA.477-483.

Following this District Court's final judgment, only Orta and Allied timely appealed. ROA.484-491.

**STANDARD OF REVIEW**

Appellate review of a district court's granting of a summary judgment is *de novo*. *Am. Nat'l Ins. Co. v. Ryan*, 274 F.3d 319, 323 (5th Cir. 2001). Pursuant to *Fed. R. Civ. P.* 56, summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(a); *Colony Ins. Co. v. Peachtree Constr. Ltd.*, 647 F.3d 248, 254 (5th Cir. 2011).

Likewise, review of a district court's decision regarding a motion to dismiss under Rule 12 is also *de novo. Gen. Star Indem. Co. v. Vesta Fire Ins. Corp.*, 173 F.3d 946, 949 (5th Cir. 1999). For a Rule 12(b)(1) motion, the analysis is either facial or factual and requires considerations of standing, ripeness, and justiciability. *Shields v. Norton*, 289 F.3d 832, 835 (5th Cir. 2002), *cert. denied*, 537 U.S. 701 (2002); *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir. 1981).

Review for a 12(b)(6) motion requires the complaint to be liberally construed and all well pled factual allegations be taken as true. *Woodward v. Andrus*, 419 F.3d 348, 351 (5th Cir. 2005). Factual allegations must be sufficient to raise more than a mere possibility of a right to relief and a plaintiff must pled "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1965, 167 L.E.2d 929 (2007).

## SUMMARY OF ARGUMENT

The District Court was wrong when it granted summary judgment in favor of MUSIC because the Exclusion is, at minimum, ambiguous; even the District Court acknowledged the Exclusion was not clearly written. This admission makes the Exclusion vulnerable to multiple interpretations and results in ambiguity as a matter of law.

Given this ambiguity, Orta and/or Allied need only offer a reasonable interpretation of the Exclusion that favors coverage. In this regard, the term "all locations" in the Exclusion refers to the location found in the Policy declarations, not any place in the world as MUSIC contends. This reasonable interpretation requires MUSIC to defend USAPD and Allied in the Liability Lawsuit and deferring determination of the duty to indemnify until there is a judgment or settlement.

The District Court also erred in denying Orta's 12(b)(1) and (6) motion to dismiss. Orta has no standing for deciding the duty to defend, as she is not an insured or in privity with MUSIC, Allied, and/or USAPD. Further, without a judgment or settlement, Orta is not a proper party to any declaratory judgment action regarding the duty to indemnify.

For all these reasons, the District Court's judgment should be reversed, MUSIC owes Allied and USAPD a duty to defend, and Orta's motions should have been granted.

## ARGUMENTS AND AUTHORITIES

## I. THE DISTRICT COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF MUSIC

### A. The Law

In a diversity case, the District Court applies the substantive law of the forum state. *Alberto v. Diversified Group, Inc.*, 55 F.3d 201, 203 (5th Cir. 1995). When considering the law to apply to insurance policies, Texas looks to the most significant relationship test. *SnyderGeneral Corp. v. Great Am. Ins. Co.*, 928 F. Supp. 674, 677-78 (N.D. Tex. 1996); *Maxus Exploration Co. v. Moran Bros. Inc.*, 817 S.W.3d 50, 53-54 (Tex. 1999). Where an insurance policy is issued to a Texas insured, Texas insurance and coverage law applies. *Tex. Ins. Code*, art. 21.42; *SnyderGeneral*, 928 F. Supp. at 577-78.

Under Texas law, insurance policies are treated like contracts and are interpreted as such. *Northfield Ins. Co. v. Loving Home Care, Inc.*, 363 F.3d 523, 527-28 (5th Cir. 2004); *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2020). The interpretation of an insurance policy is a question of law for the court. *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel L.L.C.*, 620 F.3d 558, 562 (5th Cir. 2010).

When construing an insurance policy, all parts of the policy are read together to ascertain the true intent of the parties. *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). An insurance policy is unambiguous and will be enforced as

written if it can be a "definite and certain legal meaning." *McLane Foodservice, Inc. v. Table Rock Rests, LLC*, 736 F.3d 375, 378 (5th Cir. 2013). A policy is not ambiguous because the parties disagree on its meaning. *Id*. An insurance policy is ambiguous if it is susceptible to two or more reasonable interpretations. *Id*.

If the court determines an ambiguity exists, the court must adopt the construction offered by the insured even if the insurer's explanation is more reasonable. *Lawyers Title Ins. Corp. v. Doubletree Partners, LP,* 739 F.3d 848, 859 (5th Cir. 2014). Where the policy is ambiguous, it "must be strictly construed in favor of the insured to avoid the exclusion." *Lincoln Gen. Ins. Co. v. Aisha's Learning Ctr*. 468 F.3d 857, 859 (5th Cir. 2006).

An exclusion or limitation to coverage must be stated in clear and unambiguous terms and any exclusion or exception from coverage must be strictly construed in favor of the insured and coverage. *Id*.; *Cantutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. of Pittsburgh, PA*, 99 F.3d 695, 701 (5th Cir. 1996). The burden to specifically plead and prove the applicability of an exclusion is on the insurer. *Tex. Ins. Code* § 554.002; *Am. Home Assur. Co. v. Cat Tech, LLC*, 660 F.3d 216, 220 (5th Cir. 2011); *Guar. Nat'l Ins. Co. v. Vic Mfg. Co*., 143 F.3d 192, 193 (5th Cir. 1998).

The duty to defend is distinct from and broader than the duty to indemnify. *Lincoln Gen. Ins.*, 468 F.3d at 858. The duty to defend in Texas is based on the eight

corners rule. *Gore Design Completions Lt. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 368 (5th Cir. 2008). The eight corners rule means comparing the applicable insurance policy to the lawsuit to see if coverage exists. *Id*. For coverage purposes, the facts in the underlying lawsuit control, not the theories pled. *Gore Design*, 538 F.3d at 369. The petition is to be liberally construed to assess whether facts are alleged that fall within the policy's coverage. *Lincoln Gen. Ins.*, 468 F.3d at 858. The eight corners rule is "very favorable to insureds because doubts are resolved in the insured's favor." *Gore Design*, 538 F.3d at 368. If the lawsuit alleges a potential covered claim, the insurer must defend the entire lawsuit. *Hartford Cas. Ins. Co. v. DP Engineering, L.L.C.*, 827 F.3d 423, 427 (5th Cir. 2016).

The duty to indemnify, in contrast to the duty to defend, is determined by the facts established in the underlying lawsuit. *Id*. at 430. An insurer may not have a duty to defend but have a duty to indemnify or vice versa. *Id*. The duty to indemnify generally cannot be decided until the underlying lawsuit is decided by judgment or settlement. *Id*.; *Colony Ins.*, 647 F.3d at 254. Only where the same reasons that negate the duty to defend also negate "any possibility" an insurer will ever have a duty to indemnify can the duty to indemnify be determined before a judgment or settlement. *Hartford Cas*. 827 F.3d at 430, citing *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex 1997).

**B. MUSIC Owes Allied and USAPD a Duty to Defend**

The District Court's August 22, 2025 opinion notes that coverage, "hinges on the meaning of 'ALL Locations' within the Exclusion." ROA.480. And despite conceding the Exclusion should have been better written, the District Court nevertheless held that: "'ALL' means 'All' – absent an indication to the contrary in the policy" and thus the term "all locations" is unambiguous. *Id.* However, this conclusion is flawed based on Texas insurance interpretation principles and the District Court's own determination that the Exclusion is unclear.

In order to determine whether the Exclusion precludes the duty to defend, the District Court was required to construe, consider, and harmonize the entirety of the Policy – not just the Exclusion – so that no terms are rendered meaningless. *Forbau*, 876 S.W.2d at 133. Moreover, the District Court was obligated to consider the language of the Exclusion in context with the surrounding circumstances, the terms used, and if the Exclusion includes terms with special meaning in the parlance of insurance. *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 121 (Tex. 2015). Further, the Exclusion must be construed narrowly with MUSIC owning the burden to plead and prove that the Exclusion applies to Orta's lawsuit. *Am. Home Assur.*, 660 F.3d at 220. MUSIC was likewise obliged to provide the Exclusion in clear and ambiguous terms. *Lincoln Gen.* 468 F.3d at 859.

The District Court failed to carry out the forgoing analysis and MUSIC failed to sustain its burden for proving the Exclusion applied to the Liability Lawsuit. First, applying the reading argued by MUSIC and adopted by the District Court makes the Exclusion practically and logically confusing. For instance, if the Exclusion applies anywhere and everywhere as MUSIC insists and the District Court held, then any reference and qualification regarding "all locations" and the inclusion of a locations schedule in the Exclusion would be superfluous; there would be no need for the inclusion of the term "all locations" and a locations schedule because the Exclusion would operate as a total exclusion. The Exclusion could simply exclude all coverage for assault and battery, and "locations" would not be relevant. *See gen. Tasacom Real Estate, LLC v. Associated Indus. Ins. Co. Inc*., No. 3:23-cv-1687-X, 2024 WL 3635519, *2 (N.D. Tex. Jun. 18, 2024) (exclusion provided no coverage for assault and battery without regard to circumstances including location)[2]. Applying the

---

[2] The specific exclusion in *Tasacom* reads:

**Exclusions**

Notwithstanding any other provision of this policy, this insurance does not apply to:

**Assault and Battery**

Any claim or "suit" for "bodily injury," "property damage," or "personal and advertising injury" arising out of, in whole or in part, any assault, battery, fight, altercation, misconduct, or similar incident or act of violence, whether caused by or at the instigation of or at the direction of the insured, his/her employees, customers, patrons, guests or any cause whatsoever, including, but not limited to claims of negligent or improper hiring practices, negligent, improper or non-existent supervision or employees, patrons, or guests and negligence in failing to

reasoning advocated by MUSIC and adopted by the District Court does not make practical or logical sense; there would be no need for any inclusion of the term "all locations" and the use of a location schedule if all assault and battery coverage was excluded. Including a locations component makes no sense if all coverage for assault and battery is excluded.

Second, accepting MUSIC's argument and the District Court's interpretation would also make the specific location language in location schedule found in the Exclusion and declarations meaningless. For example, the first line of the Exclusion provides: "This insurance does not apply to locations specified in the above Schedule…" In part (F) of the Exclusion, it states: "This exclusion applies to all locations if the above Excluded Location Schedule is left blank." ROA.228. Finally, at the top of the Excluded Location Schedule it declares: "If no locations are specified below the Assault or Battery Exclusion applies to ALL Locations." ROA.228. Thus, if "all locations" mean everywhere in the world as MUSIC contends, references to "locations" and the inclusion of a location schedule makes the term "all locations" meaningless. There would be no need for including the term

---

protect customers, patrons or guests. As used above, "assault" and "battery" includes sexual assault and/or sexual battery.

We shall have no obligation to defend you, or any other insured, for any such loss, claim or suit.

*Tasacom Real Estate*, 2024 WL 3635519, at *3.

"location" much less "all locations" along with a locations schedule because there would be no purpose.

Third, the term "All locations" in the Policy is ambiguous when viewed in terms of the Exclusion and the Liability Lawsuit. The Excluded Location Schedule provides for a specific address tied to a particular location number. ROA.228. The use of a location number and specific address obviously means the Exclusion is intended to apply to a specific address expressly tied to a location number, not random places anywhere in the world, and certainly not to a secluded and unidentified park somewhere in Fort Worth. The context and purpose of the Excluded Location Schedule mandates a specific address with a corresponding location number in contrast to any random place in the world where there is no specific address with a location number. Indeed, the declaration page supports this reasonable interpretation where a specific location number and address is provided:

| Loc. No. | Street Address | Street Address | City | State | Zip |
|---|---|---|---|---|---|
| 001) | 13326 WESTHIEMER RD | | HOUSTON | TX | 77077 |

ROA.223.[3]

The term "all locations" must be analyzed and considered in the context of the Exclusion where this term is used along with a specified location schedule, and not just as some broad generalization under the guise of plain meaning. The term "all

---

[3] If the same or similar terms are used in an insurance policy, then insurance interpretation principles require these same terms to have a consistent meaning absent an exception or other definition in the policy. *RSUI Indem.*, 466 S.W.3d at 126.

locations" in the Policy and specifically the Exclusion is not intended to include random places anywhere in the world given the location schedule calling for specific addresses and location numbers. "All locations" has two specific criteria and components – a particular location number and specific address – not an unidentified secluded park in some city or other random area. The term "all locations" in the Exclusion is inescapably ambiguous and may not be generalized in light of the content and context of the Exclusion and the location schedule found therein.

Further, "all locations" is defined in terms of a location schedule which is distinct from anywhere in the world; "all locations" is also different from the defined term "coverage territory" in the Policy. ROA.257. "All locations" cannot be construed without context and particularly the inclusion of a location schedule requiring specific addresses with an accompanying location number. *See gen. Custom Aluminum Prods. Inc. v. Amerisure Ins. Co.*, No. 1:17-CV-5745, 2018 WL 5977918, at *7 (N.D. Ill. Nov. 14, 2018) ("all locations" cannot be considered standing alone but must be considered in the context of the endorsement). The use of the term "all locations," considered in context, does not apply to an unidentified secluded park, and requires MUSIC to defend Allied and USAPD in the Liability Lawsuit.

Significantly, neither MUSIC nor the District Court devote necessary attention to the existence and meaning of a location schedule in the Exclusion.

Schedules in insurance policies have particular significance and call for additional and meaningful analysis. *See RSUI Indem.*, 466 S.W.3d at 121-38. Schedules in insurance policies regularly deal with limitations on an item-by-item basis and provide specific context for coverage. *Id.* at 121.

MUSIC and the District Court treat "all locations" as a stand-alone term, disregarding the existence and purpose of the "Excluded Location Schedule" in the Exclusion; but construing the term "all locations" must be done in context with the location schedule, its specific contents, and the purpose of location schedules in insurance policies. *Custom Alum. Products*, 2018 WL 5977918, at *7 (rejecting insurer's argument that "all locations" in a property policy be considered in the abstract and referred to insured's entire business).

Location schedules in insurance policies are intended to specifically embrace identifiable addresses or properties as opposed to anywhere and everywhere in the world or within the coverage territory. *RSUI Indem.*, 466 S.W.3d at 120-21 (scheduled coverage in the insurance industry means coverage on an item-by-item basis). Schedules in an insurance policy provide context for coverage and policy interpretation. *Id.* at 121. Therefore, the District Court should have construed the term "all locations" consistent with the descriptions, labels, and content found in the Exclusion which includes the location schedule. *Id.*

Interpreting the term "all locations" in the abstract and declaring that "all means all" as the District Court holds directly undermines the title, description, purpose, and context of the Excluded Location Schedule in the Policy. Again, a "location" in the "Excluded Location Schedule" means a specific address and the assignment of a location number tied to the specific address. To hold that "all locations" means everywhere and anywhere disregards the purpose, meaning, and context for a location schedule and especially for the Excluded Locations Schedule in the Exclusion.

Treating "all locations' without regard to context for a specific address and a location number is inconsistent with how the Policy treats a schedule of locations found in the Policy declarations. Construing "all locations" to mean anywhere in the world makes this term hopelessly vague and at minimum, results in an ambiguity in the Exclusion which must be construed in favor of coverage. As the drafter of the Policy, MUSIC had the exclusive opportunity to eliminate any ambiguity for the Exclusion which would leave no uncertainty in its application. MUSIC could have easily made the Exclusion applicable to any assault and battery claim but chose instead to use a location schedule which results in ambiguity to be construed in favor of coverage.

Contrary to the District Court's proclamation, "all" in the Policy may not be treated in the abstract; construing the term "all locations" requires the context and

content consideration of the location schedule in the Exclusion. As Allied established in the District Court and again in its brief in this Court, the ambiguity in the term "all locations" requires a court to apply the Exclusion in favor of coverage and that any reasonable interpretation offered by Allied (or Orta or USAPD) must be adopted even if MUSIC's interpretation is more reasonable. *Bitco Gen. Ins. Co. v. Monroe Guar. Ins. Co*., 31 F.4th 325, 331 (5th Cir. 2022).

One reasonable interpretation of the Exclusion in light of the ambiguity of "all locations" is that it only applies to the location identified in the Policy declarations – Location 001 – 13326 Westheimer Road, Houston, Texas, 77077 – USAPD's corporate office. ROA.223. This interpretation is reasonable because the use of the same terms in a policy should be construed consistently and the location schedule in the declarations includes the same content as the location schedule in the Exclusion. *RSUI Indem*., 466 S.W.3d at 126. Treating the Westheimer Road location as the only location where the Exclusion applies harmonizes the treatment and meaning of "location" and location schedules in the Policy – both in the declarations as well as the Exclusion.

In addition, USAPD, the named insured, (like Allied) is in the security services business which includes the use of security guards. By the very nature of the security business, it can be reasonably anticipated that security guards would be confronted with and called to address incidents or situations involving assault and

battery. Excluding assault and battery coverage only for USAPD's offices on Westheimer makes legal sense because no security services would be expected to be performed at that specific address (location).

MUSIC's insistence that "all locations" refers to anywhere and everywhere does not make sense given the inclusion of a location schedule mandating a specific address and location number. MUSIC ignores the use and purpose of a location schedule, the context and circumstances of the specific location schedule in the Exclusion, and the nature of USAPD's business. Instead, MUSIC resorts to the abstract, ignoring Texas rules for construing insurance policies, and any analysis for the context, use, and purpose of location schedules.

MUSIC, as the insurer, was obliged to provide a clear and unambiguous exclusion which it could have easily accomplished by excluding any coverage for assault and battery without a location schedule. But having failed to provide an unambiguous exclusion, the Exclusion must be construed in favor of coverage, and any reasonable interpretation provided by Allied (USAPD and Orta) required the District Court's acceptance and adoption thereof, and declaring that MUSIC was obliged to defend Allied and USAPD in the Liability Lawsuit.

Finally, the District Court's acknowledgment that the Exclusion was not clearly written, could have been reworded, and not used in the form it did is an admission of ambiguity. Respectfully, the District Court cannot, on the one hand,

admit that the Exclusion was less than clear and, on the other hand, credibly declare that the Exclusion is unambiguous. Indeed, the District Court's opinion does not find that the Appellants' argument regarding ambiguity in the Exclusion is without merit and more importantly that their explanation of the Exclusion is unreasonable. The District Court's opinion is at the very least a realization that the term "all locations" in the Exclusion cannot be construed in the abstract and does not mean anywhere and everywhere.

Under Texas insurance policy interpretation principles, Allied and USAPD need only show there is "potentially" a case within coverage for MUSIC to be obligated to defend. *Gore Design*, 538 F.3d at 369. Further, exclusions must be narrowly construed and "all reasonable inferences must be drawn" in favor of coverage and the insured. *Id.* at 370. The application of these principles should have resulted in the District Court compelling MUSIC to defend Allied and USAPD in the Liability Lawsuit. The District Court's failure to find a duty to defend is error, requiring reversal and rendering judgment in favor of Allied and USAPD.

## C. The District Court Prematurely Decided Indemnity

Because a duty to defend is owed to Allied and USAPD, it is premature to decide the duty to indemnify. *Hartford Cas.* 827 F.3d at 427; *Colony Ins.*, 647 F.3d at 254. Therefore, the District Court erred in deciding MUSIC owed no duty to indemnify.

The District Court's August 22, 2025 judgment should be reversed and judgment rendered in favor of Allied and USAPD for the duty to defend.

## II. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING ORTA'S RULE 12(B)(1) AND (6) MOTION.

### A. The Law

*Fed. R. Civ. P.* 12(b)(1) is the mechanism for dismissal of a case based on an absence of subject matter jurisdiction. *Mitchell v. Bailey*, 982 F.3d 937, 940 (5th Cir. 2020). Subject matter jurisdiction fundamentally involves two issues – ripeness or justiciability and standing. *Norton*, 289 F.3d at 835. A live controversy must exist which means no prematurity or speculation. *Id*. Ripeness "is a constitutional prerequisite to the exercise of jurisdiction." *Id*. Ripeness cannot be satisfied by hypotheticals. *Id*. A challenge to subject matter jurisdiction pursuant to Rule 12(b)(1) is to be decided first. *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994).

A Rule 12(b)(1) challenge comes in two forms – facial and factual. *Oaxaca*, 641 F.2d at 391. A facial attack accepts the allegations in the lawsuit as true. *Id*.

A Rule 12(b)(6) is directed to dismissal when a plaintiff has failed to state a claim on which relief may be granted. *Fed. R. Civ. P.* 12(b)(6). In order to prevail under a Rule 12(b)(6) motion, the movant must show that plaintiff would not be entitled to any relief under any set of facts or theories pled in the complaint. *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004).

All factual allegations for a Rule 12(b)(6) motion must be taken as true. *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir.1986).

A declaratory judgment action does not in and of itself provide a district court with jurisdiction. *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 389 (5th Cir. 2003). Whether a district court exercises jurisdiction over a declaratory judgment involves a three-step process. *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). First, a court must decide whether the declaratory judgment action is justiciable – meaning whether an actual controversy exists between the parties to the lawsuit. *Id*. Second, assuming the first question is answered in the affirmative, a court must determine if it has authority to grant the relief requested. *Id*. Third, if the first two questions are answered yes, the court must decide whether it chooses to exercise discretion to decide or dismiss the declaratory judgment action. *Id*.

A federal declaratory judgment action based on diversity must be evaluated on whether state law permits the relief being requested. *Northfield Ins.*, 363 F.3d at 537. Whether a district court may grant declaratory relief at all turns on whether the governing state law permits it. *Id.*; *Klein v. O'Neal, Inc.*, No. 7:03-cv-102-D, 7:09-cv-094-D, 2009 WL 10656010, at *3 (N.D. Tex. Nov. 2, 2009). Texas law does not permit the duty to indemnify to be decided without the existence of a judgment or settlement absent certain specific and limited circumstances. *Westport Ins. Corp. v. Atchley, Russell, Waldrop & Hlavinka, LLP*, 267 F.Supp.2d 601, 626 (E.D. Tex.

2003). Further, a party who is not an insured has no standing regarding a declaratory judgment relating to the duty to defend. *See gen. In re Essex Ins. Co.*, 450 S.W.3d 524, 525-26 (Tex. 2014) (orig. proceeding).

**B. The District Court Should Have Granted Orta's Motion**

It is undisputed that Orta is neither an insured nor judgment creditor of USAPA or Allied. Accordingly, there is no existing dispute between Orta and MUSIC over any duty to defend. Further, without any existing judgment or settlement, there is no controversy over the duty to indemnify. Thus, with no existing controversary between Orta and MUSIC, the District Court had no subject matter jurisdiction and Orta's request for dismissal pursuant to 12(b)(1) should have been granted.

Likewise, MUSIC has no basis to make Orta a defendant in their declaratory judgment action regarding the duty to defend. Orta is not an insured for the duty to defend, MUSIC has no contractual privity with Orta for the duty to defend, and Orta has no rights regarding the duty to defend. Orta does not have standing to litigate the duty to defend issue; if Orta had sued MUSIC for declaratory relief regarding the duty to defend, her lawsuit would have been dismissed, and she might have been sanctioned. *Essex Ins.*, 450 S.W.3d at 525-27.

Additionally, because Texas law determines the availability of declaratory relief for the duty to indemnify, MUSIC may not (absent limited exceptions) seek a

determination of the duty to indemnify when there is no existing judgment or settlement. *Westport Ins.*, 267 F.Supp.2d at 626. MUSIC's declaratory request for indemnification was at best premature.

The District Court abused its discretion in denying Orta's Rule 12(b)(1) and (6) motions to dismiss, particularly as it relates to the duty to defend. At the very least any declaratory relief against Orta should have been limited to the duty to indemnify and stayed absent a judgment or settlement.

## CONCLUSION

The Exclusion is ambiguous and under Texas insurance coverage principles the Exclusion is to be construed in favor of coverage, requiring MUSIC to defend USAPD and Allied in the Liability Lawsuit. MUSIC's declaratory judgment action with regard to the duty to defend against Orta is without subject matter jurisdiction and fails to state a claim upon which relief may be granted.

The District Court's judgment should be reversed and judgment rendered that MUSIC has a duty to defend Allied and USAPD in the Liability Lawsuit and the duty to indemnify should be stayed pending the outcome of the Liability Lawsuit. Further, MUSIC's declaratory relief claim regarding the duty to defend against Orta's should be dismissed.

WHEREFORE, PREMISES CONSIDERED, Orta prays this Honorable Court reverse the judgment of the District Court as prayed for, render judgment for USAPD for the duty to defend, and grant Orta all other relief to which she is entitled.

Respectfully submitted,

*/s/ Mark A. Ticer*
Mark A. Ticer
State Bar No. 20018900
mticer@ticerlaw.com
Jennifer W. Johnson
State Bar No. 24060029
jjohnson@ticerlaw.com
**Law Office of Mark A. Ticer**
10440 N. Central Expressway, Suite 600
Dallas, Texas 75231
(214) 219-4220 (Telephone)
(214) 219-4218 (Facsimile)

***ATTORNEY FOR DEFENDANT-
APPELLANT ALICIA ORTA***

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2025, I electronically filed *Appellant Alicia Orta's Brief* with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system. I certify that all participants in the case are CM/ECF users and that service has been accomplished by the CM/ECF system.

*/s/ Mark A. Ticer*
Mark A. Ticer

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-volume volume limitation of *Fed. R. App. P* 32(a)(7)(B) because this brief contains 6,106 words, excluding the parts of the brief exempted by *Fed. R. App. P.* 32(a)(7)(B)(iii). Further, this brief complies with the typeface requirements of *Fed. R. App. P.* 32(a)(5) and type style requirements of *Fed. R. App. P.* 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font.

*/s/ Mark A. Ticer*
Mark A. Ticer